UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| MICHAEL ALLEN SHOFFNER, *et. al.*, ) | |
| ) | |
| *Plaintiffs*, ) | No. 4:01-cv-54 |
| ) | |
| v. ) | Judge Mattice |
| ) | |
| CSX TRANSPORTATION, INC., *et. al.*, ) | |
| ) | |
| *Defendants*. ) | |

## **MEMORANDUM AND ORDER**

Before the Court is Plaintiffs' Motion to Set Aside Stay and to Enter a Scheduling Order. [Court Doc. 53.] On August, 1, 2001, the Court entered a Memorandum and Order staying the instant case, which was subsequently affirmed by the Court on March 26, 2008. *See* (Court Docs. 21, 44.) This stay, which is based upon the Court's application of the *Colorado River* abstention doctrine, is reliant upon the outcome of a parallel class action pending in the Circuit Court for Rutherford Country, Tennessee. *See Charles Wheeler Hord, et al. v. Quest Comm'c Int'l, Inc.*, Civ. Action. No. 4008 (Rutherford County, Tenn. Circuit. Ct., May 14, 1998.)

Plaintiffs assert that a state court ruling has caused a material change in the facts and circumstances of the case. (*Id.* at 2.) Therefore, Plaintiffs claim the Court should lift the Court's August 1, 2001 stay and enter a scheduling order allowing Plaintiffs to proceed to trial upon a trespass claim against Defendants for compensatory and punitive damages. (*Id.*)

For the reasons stated below, the Court **DENIES** Plaintiffs' Motion to Set Aside Stay. [Court Doc. 53.]

## I. FACTS AND PROCEDURAL HISTORY

The facts, taken in the light most favorable to Plaintiff, are as follows.

The Shoffner family ("Plaintiffs") filed this civil action on April 19, 2001, in the Circuit Court of Bedford County, Tennessee, to recover compensatory and punitive damages from CSX Transportation, Inc. "CSXT", Qwest Communications International, Inc. "QCI" and Qwest Communications Corporation "QCC", a wholly owned subsidiary of QCI, ("Defendants") for the trespass upon Plaintiffs' lands in Bedford County. (Court Doc. 55.)

Plaintiffs claim that CSXT trespassed on their property by creating and using as a right-of-way through their property for the purpose of operating a railroad track. (Court Doc. 54 at 4.) Plaintiffs also claim CSXT does not own the underlying fee for the Plaintiffs' land, which was vested and remains vested in the Plaintiffs. (*Id.*)

In the Complaint, Plaintiffs assert that CSXT entered into a Fiber Optic Placement Agreement with QCI. (*Id.*) This agreement allegedly provided lease or rental payments to CSXT in exchange for CSXT's grant to QCC of the "right" to dig and to lay fiber optic cable along the CSXT track. (*Id.*) Plaintiffs further argue Qwest buried a cable extending 2,025 feet on Plaintiffs' family trust land and 2,191 feet on the adjacent property of Michael Allen Shoffner and Gay Shoffner, also Plaintiffs. (*Id.*) Plaintiffs then assert CSXT entered into a Fiber Optic Placement Agreement and collateral agreements with QCC which gave QCC a license, permit, lease, or easement for the use of their land. (*Id.*)

In light of said assertions, Plaintiffs allege the following: (1) Defendants did not notify Plaintiffs of said work; (2) Defendants did not ask Plaintiffs nor receive permission from Plaintiffs to complete said work; (3) Defendants did not provide Plaintiffs with compensation for said work; and (4) Defendants did not attempt to exercise eminent domain over

Plaintiffs' land. (*Id.*)  Furthermore, Plaintiffs claim CSXT had no right to enter into said agreements with Qwest, QCC, and QCI for the use of Plaintiffs' land. (*Id.*)  Plaintiffs assert Defendants alleged actions burden Plainitffs' land, and that Defendants are jointly and severally liable for trespass and damages Plaintiffs have sustained. (*Id.*)  Plaintiffs seek compensatory and punitive damages, rents for the use of their land, the setting aside of the Fiber Optic Placement Agreement, and removal of the cloud upon their title. (*Id.* at 5.)

Defendants QCC and QCI filed a notice of removal on May 29, 2001 to the United States District Court for the Eastern District of Tennessee at Winchester on the grounds of diversity jurisdiction under 28 U.S.C. § 1332. (*Id.*)  Defendant CSXT also consented to and "joined in" the notice of removal. (*Id.*)

On June 5, 2001, Defendant CSXT filed a motion to dismiss the complaint.  In the alternative, Defendant CSXT requested the Court stay further judicial proceedings pending the completion of what Defendants have continued to claim is parallel litigation in the class action lawsuit *Charles Wheeler Hord, et al. v. Qwest Communications International Inc., et al.*, Civil Action Number 40084 (thereinafter referred to as the "*Hord*" case). (*Id.* at 6.)  The *Hord* case was filed in state court on May 14, 1998, as a class action lawsuit pending in the Circuit Court of Rutherford County between the Plaintiffs and the Defendants for damages based on the same facts before this Court.

On August 1, 2001, Judge R. Allan Edgar filed a Memorandum and Order applying the *Colorado River* abstention doctrine granting a stay and setting aside a scheduling order, which had previously been agreed to on June 12, 2001. (*Id.* at 7.) Essentially, this Court abstained from exercising diversity jurisdiction over Plaintiffs' complaint pending a final judgment in *Hord.* (*Id.*)

The Plaintiffs filed a motion to reconsider on August 3, 2007, requesting this Court lift the stay executed by the Court in the August 1, 2001 Order. (Court Doc. 39.) The Court denied Plaintiffs motion in a March 26, 2008 Memorandum and Order. (Court Doc. 44.) The Plaintiffs then filed a petition to appeal to the United States Court of Appeals for the Sixth Circuit on April 10, 2008, which was denied on July 29, 2008. (Court Doc. 45.)

In the March 26, 2008 Order, the parties were required to file periodic status reports of the proceedings in the *Hord* case. (Court Doc. 44.) Several reports have been filed, the last of which was file by the parties on September 16, 2009. (Court Doc. 52.)

## II. ANALYSIS

The Court has previously ruled, on two separate occasions in the case, that the *Colorado River* doctrine applies. Because the Court finds the facts and circumstances have not materially changed since the March 26, 2008 Order, this Order will only briefly state the reasons for reaffirming the analysis relied on by the Court in its previous Order.

The *Colorado River* doctrine addresses the contemporaneous exercise of jurisdiction over the same controversy by state and federal courts. *Colorado River*, 424 U.S. at 817. Courts faced with the decision whether to abstain pursuant to *Colorado River* must first determine if the state and federal actions are parallel. *Romine v. Compuserve Corp.*, 160 F.3d 337, 339-40 (6th Cir. 1998). Plaintiffs argue that the case in this Court and the *Hord* case can no longer be parallel because the judge in *Hord* concluded in his October 19, 2009 Order that:

> The Court is unable to grant the motion (i.e., the June 10, 2009 motion filed by they Shoffner Family for exclusion of their separate trespass claims from the inverse condemnation class action claims in the *Hord* case) because the movants' trespass claims are not included in the class action pending in this case,

> the Court having ruled in its August 20, 2008 Memorandum and in its February 23, 2009 Order that the representative plaintiffs have not satisfied the requirements of Rule 23, **Tennessee Rules of Civil Procedure**, concerning claims for compensatory and punitive damages based upon trespass and, therefore, this court has no jurisdiction over those claims.

( Court Doc. 54, Exhibit A. Judge Harris's Oct. 19, 2009 Order.)

In light of this ruling, Plaintiffs argue that the *Hord* court is no longer exercising concurrent jurisdiction over the issue before this Court. Essentially, Plaintiffs request this Court to lift the Stay to allow them to pursue compensatory and punitive damages against Defendants on their trespass theory. For the reasons stated below, the Court declines to grant Plaintiffs motion.

"'Absention from the exercise of federal jurisdiction is the exception, not the rule.'. . . Abstention rarely should be invoked, because the federal courts have a 'virtually unflagging obligation. . . to exercise the jurisdiction given them.'" *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817 (1976)); accord *Caudill v. Eubanks Farms, Inc.*, 301 F.3d 658, 660 (6th Cir. 2002). Nevertheless, exceptional circumstances may support abstention. See *Colorado River*, 424 U.S. at 813-19. The Court finds exceptional circumstances still exist supporting abstention in this case and that the state court's October 19, 2009 Order did not materially alter any facts or circumstances that warrant lifting of the previous two orders to stay the action before this Court.

In the *Hord* case, the same issue as to whether the Defendants harmed Plaintiffs land without authority to exercise imminent domain has not been determined. The Court finds the Tennessee Supreme Court's interpretation of applicable Tennessee law in

*Meighan v. U.S. Sprint Communications Co.*, 924 S.W.2d 632 (Tenn. 1996) helpful. The *Meighan* Court held:

> We uphold the long-standing law of this jurisdiction that a property owner whose property is taken by an authority exercising the power of eminent domain has two alternative causes of action. The property owner may petition for a jury of inquest as provded by statute. Tenn. Coce Ann. § 29-16-123(a) (1980 Repl.). This alternative, properly designated as an inverse condemnation action, must be instituted in accordance with the statutory provisions applicable to condemnation actions initiated by the taking authority. . . . Alternatively, the property owner may sue for damages in a trespass action. If the owner proceeds on a trespass cause of action, the proceeding is by jury "in the usual way." Tenn. Code Ann. § 29-16-123(a) (1980 Repl.)

*Meighan*, 924 S.W.2d at 640-41.

The state court in *Hord* did not rule that the Plaintiffs could not recover against the Defendants in the takings issue. Rather, that issue is still being litigated. The state court merely held that under Tennessee law, the Plaintiffs did not have a claim for taking under the theory of trespass. "[T]he Tennessee Rules of Civil Procedure allow a plaintiff simultaneously to pursue a variety of legal theories against a defendant so long as the plaintiff is not awarded a double recovery. If the damage award results in a duplicative recovery, the court may then direct the plaintiff to elect a remedy." *Hickson Corp. v. Norfolk Southern Ry. Co.*, 260 F.3d 559, 567 (6th Cir. 2001). The state court still continues to recognize the Plaintiffs' potential right to recover on the same facts and for the same alleged misconduct at issue before this Court by the Defendants under the theory of inverse condemnation.

The Sixth Circuit has held, "[i]f there is any substantial doubt that the parallel litigation will be an adequate vehicle for the complete and prompt resolution of the issues

between the parties, it would be a serious abuse of discretion for the district court to stay or dismiss a case in deference to the parallel litigation." *Chellman-Shelton v. Glenn*, 197 Fed. App'x 392, 394 (6th Cir. 2006) (quoting *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 592 (7th Cir. 2005) (internal citation and quotation marks omitted)). The facts in this case do not raise a *substantial* doubt that the parallel litigation in state court will not be an adequate vehicle for a complete and prompt resolution of the issues once a final decision is given. Although the state court has ordered that Plaintiffs may continue on one theory instead of two, the remaining claim of inverse condemnation may very well address – and even possibly surpass – any remedy the parties could possibly recover under the trespass theory of eminent domain. Furthermore, when the claims in the *Hord* case are litigated fully, the state court could fully compensate Plaintiffs for damages caused by Defendants, making this case in this Court potentially barred by res judicata requiring dismissal of the federal claim altogether. *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1075 (6th Cir. 1998).

But, because the outcome of the *Hord* case has yet to be determined, and the claim is still pending, the Court is not willing lift the stay "pending a final judgment in the *Hord* case" required by the original August 1, 2001 Order to Stay and thus concludes that the two cases continue to be parallel. Accordingly, the Court finds the state court continues to exercise concurrent jurisdiction.

Once the threshold determination has been made regarding parallel jurisdiction, the Court need not address the individual *Colorado River* factors in its analysis. However, the Court will briefly reiterate this part of the analysis. In determining whether abstention is warranted, the Court looks to:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; . . . (4) the order in which jurisdiction was obtained[;]. . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state-court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001) (quotation omitted). The Court has twice held that the majority of the factors relied upon in *Colorado River* and its progeny support this Court decision to stay the litigation in the instant case. The Court does not find its analysis has changed since the Court's last continuation of the stay handed down in the March 26, 2008 Memorandum and Order. The factors continue to support the March 26, 2008 Order. Accordingly, the Court will decline Plaintiffs' request to lift the stay.

### III. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's Motion to Lift Stay and Enter a Scheduling Order. (Court Doc. 53.)

SO ORDERED this 12th day of August, 2010.

                                            */s/Harry S. Mattice, Jr.*
                                            HARRY S. MATTICE, JR.
                                        UNITED STATES DISTRICT JUDGE