UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| | | |
|---|---|---|
| ALLEN SHOFFNER, TRUSTEE OF THE | ) | |
| ALLEN AND EDNA SHOFFNER FAMILY | ) | |
| LIVING TRUST, and | ) | |
| MICHAEL ALLEN SHOFFNER and | ) | |
| LINDA GAY SHOFFNER | ) | Case No. 4:01-cv-54 |
| | ) | Mattice/Carter |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| QWEST COMMUNICATIONS CORPORATION, | ) | |
| and QWEST COMMUNICATIONS | ) | |
| INTERNATIONAL, INC. | ) | |
| | ) | |
| *Defendants*. | ) | |

REPORT and RECOMMENDATION

I. Introduction

Qwest Communications Corporation and Qwest Communications, Inc. (collectively "Qwest") have moved for summary judgment pursuant to Fed. R. Civ. P. 56 on the issue of damages in the trespass claims of Plaintiffs Allen Shoffner, Trustee of the Allen and Edna Shoffner Family Living Trust; and Michael Allen and Linda Gay Shoffner (collectively "the Shoffners") arising from Qwest's underground placement of communication lines along an existing railroad right of way running across the Shoffners' properties. [Doc. 142]. The Shoffners have filed cross motions for summary judgment for damages on their claims for trespass as well as the constitutional claims they have raised in their amended complaint. [Docs. 135 and 137]. For the reasons stated, it is RECOMMENDED that Qwest's motion for summary judgment be GRANTED [Doc. 142] and the Shoffners' motions for summary judgment [Docs. 135 and 137] be DENIED.

## II. Background

### A. Case History

This action has a long history beginning on April 19, 2001, when it was filed in this Court. The history and facts of this case were summarized by the District Court in an opinion which, *inter alia,* granted Qwest's motion for partial summary judgment on March 26, 2013. [*See* Opinion and Order, Doc. 121]. The undersigned will not repeat the background of this case except as necessary to address the motions for summary judgment currently pending.

In the District Court's March 26, 2013 opinion, the Court granted Qwest's motion for partial summary judgment which was directed at the sole issue of the proper measure of damages *if* Qwest were to be found liable to the Shoffners for trespass in Tennessee pursuant to Tenn. Code Ann. § 29-16-123 as a result of the placement of their conduit on the existing railroad right of way. The Court did not address the issue of whether, in fact, Qwest was liable; it only addressed the proper measure of damages in the event it was later determined Qwest was liable. In so doing, the Court concluded,

> In sum, when bringing a trespass action for "damages in the ordinary way" under § 29-16-123, "a property owner's measure of damages is the same as in any other case involving injury to real property." *Meighan*, 924 S.W.2d at 642. And "[t]he proper measure of damages for injury to real property is the lesser of either (1) the difference in reasonable market value of the premises immediately prior to and immediately after the injury, or (2) the cost of repairing the injury." *Simmons*, 2009 WL 4723369, at *5.

(March 26, 2013 Opinion and Order, Page ID # 1134). The Court explicitly made "no holding as to the availability of punitive damages in this case. *Id.* at Page ID # 1135.

### B. Facts

Except as otherwise indicated, the undisputed facts material to the two outstanding motions for summary judgment are these: There are two tracts of land at issue in this case: (a) a

tract owned by Plaintiffs Michael and Linda Gay Shoffner ("Tract One"); and (b) a tract owned

by the Allen and Edna Shoffner Family Living Trust (the "Shoffner Trust"), of which Plaintiff

Allen Shoffner is trustee ("Tract Two"). Both tracts are located in Bedford County, Tennessee,

and adjoin one another at some point along a common boundary. The railroad right of way at

issue extends in one continuous line across both tracts.

### *1. Tract One*

Tract One is a triangular shaped parcel located in rural Bedford County, Tennessee, and

bounded on the east side by a railroad right of way currently held and used by CSX

Transportation, Inc. (CSXT). By deed dated March 16, 1946, J.S. Spencer, Ona Dickey, and

Martha Dickey conveyed to The Nashville, Chattanooga & St. Louis Railway, together with its

successors and assigns, a right of way in certain real property located in Bedford County,

Tennessee (the "1946 Deed"). (*See* 1946 Warranty Deed, Page ID # 1280). Plaintiffs

acknowledge that The Nashville, Chattanooga & St. Louis Railway is the predecessor of CSXT,

the railroad currently using the right of way. (*See* Allen Shoffner's brief in support of summary

judgment, Page ID # 1207). The right of way (ROW) is described in the 1946 Deed as follows:

> A right of way one hundred and fifty (150) feet wide, lying seventy-five
> feet (75) feet on either side of and parallel with the located center line of the
> Railway's Holt Curve-Haley Revision of its main track as stacked on the ground,
> beginning at our north boundary line, the same being the south boundary line of
> the Gore Property and extending southwardly across our property, two Thousand,
> one hundred (2,100) feet, more or less, to our south boundary line, the same being
> A.H. Hickerson's north boundary line.

(The 1946 Deed, Page ID # 1280). This ROW described in the1946 Deed is the same right of

way at issue in relation to Tract One in this action.

On March 30, 1987, Tract One was conveyed by warranty deed (the "1987 Deed") by

Charles W. Spencer, Elinor N. Thompson and John W. Thompson to Michael Allen Shoffner and

Linda Gay Shoffner. (*See* 1987 Deed, Page ID # 826-828, 1283-1285). The 1987 Deed

described Tract One as follows:

> Beginning at a point of the south margin of Haley Road at the northwest corner of the Allen Shoffner Property and the northeast corner of the property herein described; thence leaving the said south margin S 6 deg. 05 min. E 54.65 feet to a metal pin; thence S 14 deg. 11 min. E 140.35 feet to a gate post; thence S 32 deg. 28 min. E 391.24 feet to a corner post; thence S 6 deg. 01 min. W 631.26 feet *to a fence corner post on the east margin of the L and N Railroad; thence following the said east margin N 30 deg. 02 min. W 993.59 feet to a metal pin by telephone pole;* N 30 deg. 34 min. W 706.79 feet; N 30 deg. 04 min. W 142.73 feet; N 28 deg. 36 min. W 154.96 feet; N 26 deg. 48 min. W 193.04 feet to a point in the center of a drive; thence leaving the said east margin and following the said center N 48 deg. 59 min. E 94.81 feet to a point on the southwest margin of Haley Road; thence leaving the said center and following the said southwest margin S 35 deg. 25 min. E 114.24 feet; S 40 deg. 26 min. E 129.67 feet; S 43 deg. 51 min E 173.40 feet; S 44 deg. 57 min. E 504.99 feet to a metal pin; S 46 deg. 21 min. E 93.64 feet; S 53 deg. 35 min. E 73.83 feet; S 68 deg. 18 min. E 85.83 feet to the point of beginning and containing 12.88 acres.

*     *     *

> The said Charles W. Spencer and Elinor N. Thompson covenant that they are lawfully seized and possessed of said land; that they have a good right to convey same; and that the same is unencumbered, with the exception of the 1987 land taxes, which are prorated between grantors and grantees as of the date of this conveyance.

(The 1987 Deed, Page ID # 1283-84) (emphasis added).

In 1998, Qwest, with permission of CSXT, laid its conduit and fiber optic cables

on the east side of the ROW "well less than 50 feet from the railroad tracks." (Decl. of

Jack Shives, Page ID # 1307-08). According to Michael and Linda Shoffner, they own in

fee simple that strip of land, approximately 2,191 feet long and 75 feet wide measured

from and lying east of the centerline of the ROW; thus, they argue, placement of the

conduit and fiber optic cables without their permission constitutes a trespass on their

property. Qwest contends the western boundary of Tract One extends only up to the

outer eastern edge of the ROW, it does not include any part of the strip of land where the

4

ROW is located, and, therefore, placement of their conduit and cables does not constitute a trespass on Tract One.

### 2. Tract Two

It is undisputed that the ROW extends approximately 2,025 feet across Tract Two which is owned by the Allen and Edna Shoffner Family Living Trust (the Shoffner Trust) and adjoins Tract One. The ROW across Tract Two was conveyed by a May 13, 1946 Decree of Bedford County Circuit Court in Tennessee (the 1946 Decree) to CSXT's predecessor. According to Qwest, the 1946 Decree simply states a right of way is given to CSXT's predecessor and provides no express restrictions on the uses of the ROW. (1946 Decree, Page ID # 1291).[1] It is undisputed that in 1998, Qwest laid conduit and fiber optic cable within this ROW without the owner's permission and without compensating the owner.

### III. Analysis

### A. Standard of Review

Fed. R. Civ. P. 56(c) provides that summary judgment will be rendered if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to show that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432,

---

[1] The copy of the 1946 Decree Qwest has attached to its motion for summary judgment has a black vertical line about an inch wide running down the length of the page rendering a significant portion of it illegible. (*See* Ex. A-7, Page ID # 1291).

1435 (6th Cir. 1987). The moving party may satisfy its burden by presenting affirmative evidence that negates an element of the nonmoving party's claim *or* by demonstrating an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-35 (1985); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). There is "no express or implied requirements in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim;" it is enough for the movant to "point[ ] out" an absence of evidence on an essential element of the non-movant's claim. *Celotex*, 477 U.S. at 323-25; *see also Harvey v. Campbell Cnty, Tenn.,* 453 Fed. Appx. 557, 560 (May 10, 2011).

Once the moving party has fulfilled his initial burden under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to "go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324-25; *see also, White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *60 Ivy Street*, 822 F.2d at 1435-36.

<u>B. Tract One</u>

*1. Trespass*

Michael and Linda Shoffner have brought a claim for trespass on Tract One under Tenn. Code Ann. § 29-16-123 which requires possession of the owner's land before the owner is entitled to relief. *See* Tenn. Code Ann. § 29-16-123 ("[i]f … [a] company has actually taken possession of such land, occupying it for the purposes of internal improvement, the owner of such land may petition for a jury inquest…."); *see also Willowmet Homeowners Ass'n v. City of Brentwood*, 2013 WL 2152522 *4 (Tenn. Ct. App. May 16, 2013) (in action brought under Tenn. Code Ann. § 29-16-123, "it is 'incumbent upon the plaintiff to show that he is the owner of the land which has been taken for the purposes of internal improvement if the ownership is denied by the defendant.'") (citing *Cox v. State,* 399 S.W.2d 776 (Tenn.1965)).

Qwest asserts it has not possessed Tract One because the ROW where it laid its conduit and fiber optic cables is not within the boundaries of Tract One. In support of this argument, Qwest refers to the actual language of the 1987 Deed whereby Michael and Linda Shoffner obtained title to Tract One.

First, the 1987 Deed which lays out the boundaries of the property states that the boundary runs "*to a fence corner post on the east margin of the L and N Railroad; thence following the said east margin N 30 deg. 02 min. W 993.59 feet to a metal pin by telephone pole….*") Qwest argues the use of the words "to" and "margin" indicate an intention to use the edge of the ROW as the western boundary line for Tract One.

Second, notes Qwest, the 1987 Deed states the property being conveyed is *unencumbered* except for 1987 taxes. Qwest argues that if a ROW existed on the

7

property being conveyed by the 1987 Deed, such ROW would have constituted an encumbrance.

Plaintiffs argue the western boundary line for Tract One is the centerline of the 150 foot strip of land where the ROW exists. Plaintiffs raise two primary arguments to support this assertion. First, asserts plaintiffs, the deed the Court should be focusing upon is the 1946 Deed wherein J.S. and Ona Spencer and Martha Dickey, then owners of the land roughly identified as Tract One, conveyed a ROW to CSXT's predecessors. It is undisputed that the ROW, a strip of land 150 feet wide, was located within the boundaries of the property then owned by the Spencers and Ms. Dickey. Second, plaintiffs argue it is unreasonable to conclude that in 1987, the heirs of the Spencers and Ms. Dickey who then owned the property at issue would not have conveyed to Michael and Linda Shoffner the eastern, 75 foot wide half of the strip where the ROW existed thereby leaving CSXT owning the eastern half of the ROW in fee simple.[2]

In a diversity jurisdiction case such as this one, the court must "apply the law it believes the highest court of the state would apply if it were faced with the issue." *Standard Fire Ins. v. Ford Motor Co.*, 723 F.3d 690, 693 (6th Cir. 2013) (citing *Mahne v. Ford Motor Co.*, 900 F.2d 83, 86 (6th Cir.1990)). In Tennessee, "the cardinal rule to be followed … in construing deeds and other written instruments, is to ascertain the intention of the parties." *City of Nashville v. Lawrence*, 284 S.W. 882, 883 (Tenn. 1926).

---

[2] The undersigned finds this assertion to be incorrect. If the grantors of Tract One did not convey the fee simple title of the 75 foot wide eastern portion of the strip (measured from the centerline of the 150 foot wide ROW) which constitutes half of the ROW, then title of that half of the ROW would remain with the grantors. *See City of Nashville v. Lawrence*, 284 S.W. 882 (1926) wherein the Court stated that if the underlying fee where the street was located had not been transferred to the purchaser, then title in the underlying fee would lie with the grantor, not the city who had the easement for the street.

This task is done by looking "to the intention of the instrument alone for our guide, that intention to be arrived at from the language of the instrument read in the light of the surrounding circumstances." *Id.* (quoting *Williams v. Williams*, 84 Tenn. 164, 171 (1885)); *accord Ruby Tuesday, Inc. v. Largen*, 2004 WL 1467437 *2 (Tenn. Ct. App. June 30, 2004) (unpublished) ("In construing a deed, [the court's] duty is to ascertain the grantor's intention from the words used in the deed and the surrounding circumstances.")

The issue before the undersigned as to Tract One is whether, based on the language of the 1987 Deed, the boundary of Tract One follows the edge of the ROW or extends up to and along the centerline of the ROW. In *City of Nashville v. Lawrence*, 284 S.W. 882 (1926), the Tennessee Supreme Court gave its most extensive and most recent examination of the rule to be applied in determining whether a boundary line follows the edge of a highway, road, or non-navigable river; or whether the boundary line follows the centerline of the highway, road, or non-navigable river. In so doing, the *Lawrence* Court discussed, among other authorities, two prominent treatises:

> With respect to the question under consideration, it may be said that the general rule of construction, upon which all of the authorities agree, is thus stated by Mr. Kent:

> "It may be considered as a general rule that a grant of land bounded upon a highway or river carries the fee in the highway or the river to the center of it, provided the grantor, at the time, owned to the center and there be no words of specific description to show a contrary intent." 3 Kent's Commentaries (13th Ed.) 433.

> Under the title "Boundaries" we quote from 9 Corpus Juris as follows:

> Section 83: "It is the established rule that a conveyance of land bounded on a street or highway carries with it the fee to the center thereof, subject to the easement of public way, provided the grantor at the time owned to the center and there are no words of specific description to show a contrary intent. … So well established is this principle that it is said that the use of the words 'to the middle

line of' really adds nothing to the interest given by a conveyance bounded by the street….

Section 84: "Briefly stated, the reasons in support of the rule may be outlined as follows: (1) The absence of any purpose to be served in the retention by the grantor of a narrow strip of land along the boundaries of the land conveyed, or the absence of any practical use to him for the strip of land; (2) the immediate interest of the vendee therein and its direct and substantial value to him; (3) grounds of public convenience and the prevention of disputes as to the precise boundaries of property; (4) the embarrassment to alienation and the improvement of property, which it consists with public policy to favor, if a different rule prevailed; (5) the concern of the state itself as to who shall determine and pay for improvements; (6) and in conclusion it has been said: 'If no other reason could be assigned in support of this rule of construction, the general understanding of the people, and the extensive and immemorial practice of claiming and acquiescing in such rights, ought to have great weight.' "

Section 86: "The rule stated in section 83, supra, has never been held to be anything more than a rule of construction, to be used in ascertaining the true meaning of the parties. The question whether the conveyance carries title to the center of the street or highway is in all cases merely a matter of construction, to be determined from a consideration of the language used by the parties and from such surrounding circumstances as are proper to be considered in ascertaining their intent. And the presumption of an intention to convey to the center of the street or highway may be rebutted, although in no case will such an intention be presumed."

Section 88: "Where a conveyance of land bounded by a street or highway makes use of the expressions 'bounded by,' 'on,' 'upon,' or 'along' such street or highway, it is very generally held to indicate an intention to convey to the center thereof. And the fact that the beginning point is stated as being on the side of the road does not affect the operation of the rule, where the subsequent call is for boundary 'by' the road."

The *Lawrence* Court continued its examination by discussing with approval a number of cases from other jurisdictions as well as cases in Tennessee wherein the courts held that absent a clear exclusion of the highway, road, or non-navigable waterway at issue, the strong presumption is that the reference to the margin or line or side of the same nevertheless means the boundary line extends to the centerline of said highway,

10

road, or non-navigable waterway. *Id.* at 884-88. In its discussion, the *Lawrence* Court acknowledged the difficulty in determining when such an exclusion exists. *Id.*

The facts in *Lawrence* are instructive in this case. In *Lawrence,* a parcel of land was divided roughly down the middle by Walnut Street running north and south. Thirty-five feet of Walnut Street was built sometime later than the rest of the street, and the underlying fee upon which this "new" section lay was the focus of the litigation. In 1880, the owner of said parcel sold the east side of the parcel to N & C Railroad and the west side of the parcel to one James Whitworth. The question in *Lawrence* was whether the grantor had retained for himself the fee in which the "new" 35 foot section of Walnut Street lay thereby meaning that the boundary line for both the west lot sold to N & C Railroad and the east lot sold to Whitmore stopped at the western and eastern edges, respectively, of the "new" section of Walnut Street, or whether the boundary line for both the west lot and the east lot extended to the centerline of the new section of Walnut Street. The language in the N & C Railroad deed stated that the relevant boundary ran "thence at right angles eastwardly 80 feet to the said new street; thence along the west side of the said new street 211.4 feet to the beginning." *Id.* at 883. The language in the Whitworth deed stated the relevant boundary ran "75 feet to the margin of the new or Walnut street…." *Id.* at 883.

The *Lawrence* Court specifically noted "[t]he deed to the Whitworth lot does not call 'for the side line,' or 'by the margin of,' or 'by the line of,' the street," which, had it done so, would have demonstrated an intent to place the boundary line at the edge of the street. *Id.* at 888. The *Lawrence* Court concluded,

> Certainly it was not the intention of [the grantor] to include the street in
> the Whitworth deed and to reserve it in the railway deed. Both deeds must be

construed together. Apparently they were not drafted by an expert conveyancer who expressed himself in precise and exact language.

The rule deducible from all of the authorities is that each case must be determined upon its own facts, and with a view of giving effect to the intention of the parties. Where it appears clearly from the whole instrument, in conjunction with the surrounding circumstances, that the grantor intended to reserve the fee in the street, such intent will be given effect; when it does not so appear, it will be presumed that the grantee takes to the middle of the street.

After carefully considering these deeds, in connection with the circumstances surrounding their execution, we are of the opinion that the grantor did not intend to reserve the fee in said street, and that such intention does not appear with sufficient clearness to overcome the legal presumption that the grantees took to the middle of the street.

*Id.*

Unfortunately, it appears, as it did in *Lawrence,* that the 1987 Deed was "not drafted by an expert conveyancer who expressed himself in precise and exact language." In addressing this conundrum, the undersigned must apply the general rule:  If the grantors of the property to Michael and Linda Shoffner owned the underlying fee where the ROW is located, and, if no clear intent to reserve the fee for themselves exists in the 1987 Deed, then the boundary line extends to the center of the ROW.

It is undisputed that the grantors of Tract One owned in fee simple the strip of land where the ROW is located when they conveyed Tract One to the Shoffners.  While the language in the 1987 Deed indicates a boundary line "*to* a fence corner post on the east margin," it does not use the language "by the margin of," language which the *Lawrence* Court indicated would evince an intent to place a boundary at the edge of a geographic feature.  Further, in *Lawrence*, the deeds at issue specifically stated the boundaries ran "*to* the said new street" and "*to the margin* of the new" street, but the *Lawrence* Court still held the boundaries extended to the midline of the street.

Qwest has cited some more recent Tennessee Court of Appeals cases which may suggest a different result because a deed uses the preposition "to" in conjunction with the "margin" of the right of way. *See Ruby Tuesday, Inc. v. Largen*, 2004 WL 1467437, *2 (Tenn. App. March 21, 2005) (stating that "[a] deed does not carry title to the center of the street where it calls specifically for the side of the street"); and *Rolen v. Rolen*, 423 S.W.2d 280, 281 (Tenn. App. 1967) ("The word 'to', when used to express a boundary, ordinarily is a term of exclusion, and is always to be understood in that way, unless there is something in the conveyance which makes it manifest that it was used in a different sense.") To the extent that these cases suggest a different result, the undersigned finds them to be incongruous with the Tennessee Supreme Court's extensive examination of the same issue in *Lawrence,* and the undersigned must follow the *Lawrence* decision. The language "to" the street and "to the margin" of the street were used in the relevant deeds in *Lawrence* and the *Lawrence* Court did not find an intention to have the boundary lines stop at the edge of the road. The undersigned finds, based on the presumption discussed in *Lawrence*, that the relevant boundary line in this case extends to the center line of the ROW.

The undersigned acknowledges that the 1987 Deed states the parcel being sold is unencumbered, but the reference is so oblique that the undersigned concludes it does not overcome the presumption that the boundary is intended to extend to the midline of the ROW. Further, in terms of policy as articulated in *Lawrence,* this is a much sounder result than cutting from the corpus of Tract One a strip of land, 75 feet wide and approximately 2,191 feet long. Consequently, the undersigned concludes Qwest has laid its conduit and cable on Michael and Linda Gay Shoffner's property on an existing

13

railroad right of way, and it is uncontested that Qwest did so without their permission and without compensating them. The remaining issue is the amount of damages, if any, to which they are entitled for this trespass upon their land.

   *2. Damages for Trespass*

   As previously discussed, the District Court has already held in this case that the proper measure of damages for trespass is the lesser of either (1) the difference in reasonable market value of the premises immediately prior to and immediately after the injury, or (2) the cost of repairing the injury." It is plaintiffs' contention that "the only way that the damages [to Tract One] from this trespass can be repaired is for Qwest to remove its hardware and cable." (Plaintiffs' Response at 6, Page ID # 1337). The District Court has previously held that removal of Qwest's cable is not a remedy to which plaintiffs are entitled. Assuming plaintiffs' contention that removal is the only method to *repair* damages done by Qwest to Tract One, since removal is not an option in this case, then plaintiff is left with the only option for damages being the difference in reasonable market value of the premises immediately prior to and immediately after the injury, *i.e.*, laying the conduit and the fiber optic cable within the ROW where the railroad already exists.[3]

   Qwest contends plaintiffs have no evidence to support a difference in reasonable market value because plaintiffs have provided no expert report as to this subject and have

---

[3] In *Conatser v. Ball*, 2001 WL 873457 *12 (Tenn. Ct. App. Aug. 3, 2001) (unpublished), the court held that the plaintiff in a trespass action was not required to prove both cost of repair and diminution in value after the trespass; rather, plaintiff was required only to offer damages as to one of those measures of damages. If defendant asserted one measure of damages was less than the other, it was defendant's burden to offer evidence on that measure if plaintiff had offered evidence only on the other measure of damages. *Id.* In the instant case, plaintiffs have offered no evidence whatsoever as to any measure of damages.

failed to provide their computation of damages in their initial disclosures as required by Fed. R. Civ. P. 26(a)(1)(A)(iii).

The deadline for plaintiffs' expert disclosures was October 22, 2013.  Plaintiffs concede they have submitted no expert disclosures regarding a difference in fair market value before and after Qwest laid its materials.  Plaintiffs assert that at a trial on this issue, they will present only the opinion testimony of the owners on this subject.  In Tennessee, owners of property may present their lay testimony regarding the value of their property.  *State v. Livingston Limestone Co.*, *Inc.*, 547 S.W.2d 942, 943 (Tenn. 1977).  This "policy of liberality in admitting opinion evidence respecting the fair market value of real estate" is based on the premises that, "[b]ecause of his interest in the land as its owner, it is presumed that [the owner] knows the value of it."  *Id.* (citing 1Wigmore on Evidence, § 716; Am.Jur.2d 137).  Thus while the lack of an expert report does not present an insurmountable problem for the plaintiffs in proving damages, their failure to provide a genuine computation of damages in their initial disclosure does.

Fed. R. Civ. P. 26(a)(1)(A)(iii) requires a party seeking damages to provide "a computation of each category of damages claimed by the disclosing party…."  Fed. R. Civ. P. 37(c)(1) provides in relevant part, "[i]f a party fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use that information … to supply evidence on a motion, at a hearing, or at a trial unless the failure was substantially justified or is harmless."  In the instant case, the plaintiffs did not provide a genuine computation of damages.  Instead, plaintiffs have estimated the value of their 60.3 acre tract to be worth between $241,200 and $482,400.  Plaintiffs have then completed a series of calculations stating that if the land had been diminished in value by 50%, 40%,

30%, 25%, 20%, 10%, 9%, 8%, 7%, 6%, 5%, 4%, 3%, 2%, or 1%, then the value of the property has been diminished by the corresponding amount (calculated by plaintiffs). (*See* plaintiffs' damages computations at Page ID # 1273 – 1275.) Such a series of calculations is nothing but pure speculation, and it does not put Qwest on notice as to the amount of damages the plaintiffs actually seek from it. Thus, this rote recitation of calculations does not approach compliance with the requirements of Rule 26. Furthermore, there is no reason why Plaintiffs needed information from Qwest to provide an accurate appraisal of the value of their land per acre *before* placement of the conduit and cables.

Plaintiffs assert they could not provide more definite computations because Qwest would not adequately respond to interrogatories requesting information regarding the depth, width, and legal description of the exact location of Qwest's fiber optic cable. According to plaintiffs, Qwest provided inadequate responses to their interrogatories on June 10, 2013. (Plaintiffs' Response at 7, Page ID # 1338). Qwest states plaintiffs expressed no dissatisfaction with its responses for four months after it served its answers to the interrogatories. (Qwest Reply at 9, Page ID # 1375). In any event, it is undisputed that plaintiffs never filed a motion to compel responses to such requests. Plaintiffs assert they did not do so because the undersigned had previously admonished them to work out discovery matters between themselves. While the undersigned *always* encourages parties to attempt to resolve their discovery disputes before bringing them to the court, the undersigned has never forbidden a party from filing a motion to compel if the parties

cannot resolve their differences.[4]  If they cannot, they must file the appropriate motions to resolve the issue thereby preserving their rights or bear the consequences.

The undersigned also observes that this case was originally filed on April 19, 2001 in the Circuit Court of Bedford County, Tennessee from it which was removed to this Court.  In August 2001, the District Court stayed this action pending the outcome of parallel action brought by other landowners against CSXT and Qwest in state court. Following settlement of the parallel litigation in state court, the District Court lifted the stay [Doc. 72] on April 3, 2012.  After ruling on an outstanding motion to dismiss and other matters, the District Court entered a scheduling order on April 26, 2013, setting the close of discovery on December 17, 2013 and an expert disclosures deadline of October 22, 2013 for the plaintiffs.

It defies reason that during the fourteen years this litigation has been pending, plaintiffs have not have been able to obtain some information about placement of Qwest's materials on their property which would assist them in making a more thoughtful and studied estimate of damages than the one provided in plaintiffs' initial disclosures. Certainly plaintiffs knew the length of their property and that Qwest's materials were laid underground on the 75 foot strip of existing ROW.  In addition, there is absolutely no reason that plaintiffs could not have brought a dispute related to the discovery of information about the placement of the conduit and cables to the court during the discovery period.  Instead, it appears that plaintiffs continue to insist, despite the District Court's March 26, 2013 decision to the contrary, that their actual remedy should be removal of the conduit and fiber optic cables. *See Plaintiffs' Response* at 6, Page ID #

---

[4] The undersigned has no independent memory of a discussion on this subject with the parties.

1337 ("the only way that the damages from this trespass can be repaired is for Qwest to remove its hardware and cable.")  Moreover, plaintiffs have not brought to the undersigned's attention any other discovery such as depositions, documents produced pursuant to Fed. R. Civ. P. 34, or affidavits that would provide any basis from which even an educated estimate of damages could be derived.

The consequences of plaintiffs' failure to bring the aforementioned discovery dispute to the undersigned are serious.  If a party fails to provide a computation of damages, the court *must* sanction that party by refusing to admit evidence concerning that category of damages unless the failure was substantially justified or harmless.

"If a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information ... to supply evidence on a motion ... unless the failure was substantially justified or is harmless." *Big Lots Stores, Inc. v. Luv N' Care, Ltd.,* 302 Fed. Appx. 423, 430 (6th Cir. 2008)*;* Rule 37(c)(1).  "Federal Rule of Civil Procedure 37(c)(1) requires absolute compliance with Rule 26(a), that is, it mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified." *Roberts ex rel. Johnson v. Galen of Virginia, Inc.,* 325 F.3d 776, 782 (6th Cir. 2003) (citation omitted) (footnote omitted); *see also, Bessemer & Lake Erie Railroad Co. v. Seaway Marine*, 596 F.3d 357 370 (6th Cir. 2010) ("the sanction [exclusion of evidence] is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless." (brackets added) (citing *Vance ex rel Hammons v. United States,* 182 F.3d 920 (6th Cir.1999)).

In *Bessemer*, the Sixth Circuit affirmed a district court's decision to grant summary judgment to the defendant on the plaintiff's damages claim for lost profits because the plaintiff had failed to provide a calculation of damages as required by Rule 26(a)(1)(A)(iii). *Bessemer*, 596 F.3d at 367- 370; s*ee also Alloys Int'l, Inc. v. Aeronca, Inc.*, 2011 WL 4924750 (S.D. Ohio Oct. 17, 2011) (granting summary judgment on claim for storage fees pursuant to Rule 37 where plaintiff failed to provide calculation of storage fees as required by Rule 26(a)).

In the instant case, as previously discussed, the failure to provide a computation of damages was not substantially justified.  I also find it was not harmless. A reasonable computation of damages is necessary to adequately plan and prepare for trial.  Further, the deadline for defendant's expert disclosures has passed and, without the plaintiffs' computation of damages including the basis for those computations, Qwest's own expert could not prepare an adequate rebuttal report.  Finally, a defendant is not required to go into trial blind as to the damages claim of the plaintiff.

Even if the Court were to allow plaintiffs to provide their own calculation of damages for purposes of this motion for summary judgment, plaintiffs have not done so.  Qwest has come forward with the assertion that plaintiffs have no evidence to support their damages.  Under Fed. R. Civ. P. 56, plaintiffs must now come forward with evidence to support their claim for damages and, if plaintiffs fail to do so, then Qwest is entitled to summary judgment on that claim.  *Celotex Corp. v.* Catrett, 477 U.S. 317, 323, 325 (1985) ("the burden of the non-moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case;" "we find no express or implied requirements in Rule 56 that the moving party support its motion with affidavits or other similar

materials *negating* the opponent's claim.") (emphasis original). Plaintiffs have not submitted

any evidence; *e.g.*, their affidavits or portions of a deposition, to support a claim for damages.

Therefore, on this basis alone, Qwest is entitled to summary judgment on the question of

damages. *Id.* at 324 (once the moving party has met his initial burden, Rule 56 "requires the

nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions,

answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is

a genuine issue for trial.'")

Accordingly, because plaintiffs cannot and did not come forward to rebut Qwest's

contention that they have no evidence to support a claim for damages for trespass, it is

RECOMMENDED that defendant's motion for summary judgment as to Michael and

Linda Gay Shoffners' trespass claims be GRANTED[5]. It is further RECOMMENDED

that plaintiffs' trespass claims be DISMISSED pursuant to Fed. R. Civ. P. 37(c)(1) for

failure to provide a computation of damages.

### 3. Michael and Linda Gay Shoffners' Constitutional Claims- Damages

In their amended complaint [Doc. 131], Michael and Linda Gay Shoffner have

raised claims of constitutional violations under the Due Process Clause of the Fourteenth

Amendment of the United States Constitution and under the Tennessee Constitution

arising from Qwest's placement of their conduit and cables on the existing right of way.

A motion to dismiss these claims pursuant to Fed. R. Civ. P. 12(b)(6) is pending. [Doc.

146]. The undersigned offers no opinion in this report and recommendation as to the

merits of this motion to dismiss. It will have to be examined under the appropriate

---

[5] As previously stated, the District Court has already ruled that the only remedy for plaintiffs'
claims for trespass is damages. Since there is no evidence existing to support plaintiffs' claims
for damages, the entire claim for trespass should be dismissed.

standard for such motions. However, Michael and Linda Gay Shoffner's motion for summary judgment on the issue of damages as to any of their claims, including the constitutional claims, in the amended complaint should be denied. In their memorandum, plaintiffs state, "Plaintiffs move the Court for summary judgment on damages, the amount to be determined by the jury." (Plaintiffs' memorandum at 8, Doc., 138, Page ID # 1218). Plaintiffs appear to have a fundamental misunderstanding of the purpose of a Rule 56 motion and the burdens of movants and non-movants under Rule 56. As previously discussed, plaintiffs have submitted no evidence to support any claim for damages caused by Qwest's placement of its conduit and cable on the existing railroad right of way. Consequently, plaintiffs are not entitled to summary judgment on the issue of damages as to any of their claims set forth in their complaint.[6]

<u>B. Tract Two</u>

*1. Trespass*

It is Qwest's contention that because there was no express provision in the 1946 Decree that the right of way (ROW) on Tract Two was limited to uses for the railroad, then Qwest was not required to obtain the Shoffner Trust's permission to lay conduit and cable in the ROW. Therefore, continues the argument, when Qwest laid its conduit and cable on the ROW, Qwest did not trespass upon the Shoffner Trust's land. The Shoffner Trust vehemently disagrees with this position citing the Tennessee Supreme Court's decision in *Buhl v. U.S. Sprint Communications Co.*, 840 S.W.2d 904 (Tenn. 1992).

It is unnecessary for the undersigned to address this issue, however, because plaintiff has the same problem with damages as to Tract Two as did Michael and Linda

---

[6] Qwest did not move for summary judgment on this issue of damages as to Michael and Linda Gay Shoffners' constitutional claims or the Shoffner Trust's constitutional claims.

Gay Shoffner concerning damages for Tract One. The Shoffner Trust did not provide anything close to a good faith calculation of damages in its initial disclosures, (*see* disclosures, Page ID # 1271-72), and has the same unpersuasive excuses. To "calculate" damages for Qwest's laying of conduit and cable on an already existing ROW, the Shoffner Trust provides the same purely speculative calculations – if the land has been diminished by 50%, 40%, 30%, 25%, 20%, 10%, 9%, 8%, 7%, 6%, 5%, 4%, 3%, 2%, or 1%, then the value of the property has been diminished by the corresponding amount (calculated by plaintiff). (*See* plaintiff's damages computations at Page ID # 1272 – 1273.) Pursuant to Fed. R. Civ. P. 37(c)(1), plaintiff cannot now come forward with evidence to respond to Qwest's motion for summary judgment.

Further, even if Rule 37(c)(1) did not bar plaintiff from coming forward with evidence of damages, plaintiff did not even attempt to do so in response to Qwest's motion for summary judgment. As previously discussed, when the moving party in a Rule 56 motion points out the absence of evidence on an essential element of the nonmoving party's claim, the nonmoving party must come forward with evidence to show a genuine issue of material fact exists as to that element. Plaintiff has not done so, and thus Qwest is entitled to summary judgment on this claim for damages for trespass.

### 2. Shoffner Trust's Constitutional Claims - Damages

In the amended complaint [Doc. 131], the Shoffner Trust has raised claims of constitutional violations under the Due Process Clause of the Fourteenth Amendment of the United States Constitution and under the Tennessee Constitution arising from Qwest's placement of their conduit and cables on the existing right of way. A motion to dismiss these claims under Fed. R. Civ. P. 12(b)(6) is pending. [Doc. 146]. The

undersigned offers no opinion in this report and recommendation as to the merits of this motion to dismiss. It will have to be examined under the appropriate standard for such motions. However, the Shoffner Trust's motion for summary judgment on the issue of damages as to any of their claims, including the constitutional claims, in the amended complaint should be denied. In their memorandum, the Shoffner Trust states, "Plaintiff moves the Court for summary judgment on damages, the amount to be determined by the jury." (Plaintiffs' memorandum at 8, Doc., 138, Page ID # 1218). As previously stated, there appears to be a fundamental misunderstanding of the purpose of a Rule 56 motion and the burdens of movants and non-movants under Rule 56. As discussed at length, plaintiff has submitted no evidence whatsoever to support any claim for damages caused by Qwest's placement of its conduit and cable on the existing railroad right of way. Consequently, plaintiff is not entitled to summary judgment on the issue of damages as to any of their claims, including their constitutional claims, set forth in their complaint.

## IV. Conclusion

For the reasons stated herein, it is RECOMMENDED[7]  Qwest's motion for summary judgment [Doc. 142] as to the issue of damages arising from the trespass claims of Michael and Linda Gay Shoffner and the Shoffner Trust be GRANTED and, therefore, said trespass claims be DISMISSED with prejudice.  It is further RECOMMENDED that the motions for summary judgment filed by Michael and Linda Gay Shoffner [Doc. 137] and the Shoffner Trust [Doc. 135] on the issue of damages on any claim asserted by them be DENIED.

S /William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[7]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service a copy of this recommended disposition on the objecting party.  Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure.  Failure to file of objections within the time specified waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 149, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985).  The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general.  *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).